# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SUSAN B.,

    **Plaintiff,**

    **v.**                                                         Case No. 23-CV-1044

MARTIN J. O'MALLEY
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Susan B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her Title II application for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

Claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning on January 22, 2020, due to breast cancer, fractures of the lower limb, and atrial fibrillation. (Tr. 193.) Claimant's application was denied initially and upon reconsideration. (Tr. 19.) Claimant filed a request for a hearing, and a hearing was held before Administrative Law Judge ("ALJ") William Shenkenberg on August 16, 2022. (Tr. 32–53.) Claimant, who was represented by counsel, testified, as did Thomas Gusloff, a vocational expert ("VE"). (*Id.*)

In a written decision issued November 2, 2022, ALJ Shenkenberg found that Claimant had the severe impairments of breast cancer and neuropathy. (Tr. 21.) The ALJ found that

Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 23.) The ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work, with the following limitations: she can occasionally climb ladders, ropes, or scaffolds; occasionally reach overhead with her non-dominant left upper extremity; frequently handle and finger with her dominant[1] right upper extremity; and must avoid concentrated exposure to hazards. (Tr. 23–26.)

ALJ Shenkenberg determined Claimant was capable of performing her past relevant work as a radiologic technologist. (Tr. 26.) The ALJ further found that in addition to Claimant's past relevant work, prior to attaining age 55, there were other jobs that existed in significant numbers in the national economy that she could also perform, considering her age, education, work experience, and RFC. (Tr. 26–27.) Accordingly, ALJ Shenkenberg found that Claimant was not under a disability from January 22, 2020, through the date of the decision, November 2, 2022. (Tr. 27.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Claimant's request for review. (Tr. 1–5.)

## DISCUSSION

1.    *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] While ALJ Shenkenberg referred to both Claimants' left and right upper extremities as "non-dominant" in the RFC finding (Tr. 24), it appears this is a typographical error. In the ALJ's hypothetical questions to the VE, he asked about limitations to "occasionally reach overhead with the left nondominant arm" (Tr. 50) and to "frequently handle and finger with the right dominant arm" (Tr. 51).

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

    *2.    Application to this Case*

Claimant argues that ALJ Shenkenberg erred in three ways: (1) by improperly relying on the opinion of a State Agency physician that was premised on an impairment that no longer existed; (2) by failing to obtain a medical expert to inform him about the functional impact of Claimant's cancer and cancer-related treatment; and (3) by improperly evaluating Claimant's subjective allegations of joint pain, fatigue, and neuropathy and failing to include corresponding limitations in the RFC. I will address each argument in turn.

    2.1    Medical History and Treatment

On January 22, 2020, her alleged onset date, Claimant fell and sustained a closed femur fracture, requiring surgery. (Tr. 1802.) While recovering from this surgery, on April 17,

2020, Claimant discovered a lump in her left breast. (Tr. 295.) Because she was on an oral anticoagulation medication for her atrial fibrillation, a biopsy was delayed until May 4, 2020. (*Id.*) An MRI was performed on May 9, 2020 and a PET CT scan on May 15, 2020. (*Id.*) The tests confirmed Claimant's left breast mass was malignant (Tr. 295–96) and she was diagnosed with Stage 3B breast cancer with hypermetabolic lymph node metastases (Tr. 1556). Claimant was started on chemotherapy immediately, as the malignancy had shown very rapid growth. (*Id.*)

Soon thereafter, Claimant began experiencing tingling and numbness in her right fingers and feet. (Tr. 285, 299, 305, 336–37, 413, 426–27.) Claimant completed chemotherapy in October 2020 and underwent a double mastectomy with immediate reconstruction on December 3, 2020. (Tr. 1111.) The final surgical pathology revealed no evidence of residual malignancy and no lymph node involvement. (Tr. 1100.) Claimant reported, however, that the numbness and tingling in her hands and feet worsened in December 2020 and January 2021, after finishing chemotherapy. (Tr. 1100, 1115–16, 1126.) After completing chemotherapy, Claimant's medical providers recommended she undergo five weeks of radiation therapy, which she did from April to May, 2021. (Tr. 1236, 2083.) After completing radiation, Claimant was started on anastrozole[2] in June 2021. (Tr. 2083.)

Claimant testified that she needs to take the anastrozole for five years, and it causes extreme fatigue throughout the day, as well as joint pain and muscle aches. (Tr. 41, 43.) The medical records show that in late July 2021, Claimant reported that the chemotherapy-related numbness in her fingers was improving, as was her fatigue. (Tr. 1214.) Approximately one

---

[2] Anastrozole is in a class of medications called nonsteroidal aromatase inhibitors. It works by decreasing the amount of estrogen the body makes. This can slow or stop the growth of many types of breast cancer cells that need estrogen to grow. https://medlineplus.gov/druginfo/meds/a696018.html (last visited Dec. 30, 2024).

month later, Claimant reported that her biggest complaint was fatigue, but she also had neuropathy in her right hand and foot from chemotherapy. (Tr. 1280.) She further stated that she was taking anastrozole but was debating whether she would continue it long term due to the side effects. (*Id.*) Claimant reported in October 2021 that the tingling in her right foot and fingers was slowly improving. (Tr. 1271.)

Claimant underwent two additional breast reconstruction surgeries in March and July of 2022. (Tr. 1311, 1934, 1938.) Also, Claimant fell on May 6, 2022, while cleaning her refrigerator and fractured the fourth and fifth fingers on her left hand (Tr. 1808–09), requiring surgery (Tr. 1794). In July 2022, Claimant stated that her neuropathy symptoms were improving with time; however, she continued to experience arthralgias in her elbows and knees secondary to the anastrozole. (Tr. 2086.)

### 2.2    Reliance on State Agency Physician's Opinion

On December 14, 2021, State Agency physician Ronald Shaw, M.D. evaluated Claimant at the reconsideration level. Dr. Shaw found Claimant had the severe impairments of disorders of the skeletal spine and osteoarthrosis and allied disorders. (Tr. 61.) The evaluation noted the following changes to her condition at the reconsideration level, in relevant part: fatigue, lack of balance, lack of grip strength, lightheadedness, numbness, stiffness, and tingling; as well as limitations in kneeling, reaching, squatting, stair climbing, using hands, and walking. (Tr. 60.) Dr. Shaw opined that Claimant was capable of performing light work, with limited reaching in front, laterally, and overhead with the left arm due to "lump removal." (Tr. 61–62.)

ALJ Shenkenberg found Dr. Shaw's opinion only partially persuasive. (Tr. 25–26.) In so concluding, he noted that Dr. Shaw found that Claimant had severe musculoskeletal

impairments despite the record lacking documentation of evidence of severe musculoskeletal impairments. (Tr. 26.) The ALJ further found that the record did not support a reaching limitation, as the treatment notes did not document ongoing limitations in the shoulder or upper extremity range of motion. (*Id.*) He concluded, however, that the limitation to light work was well-supported by the record and that Claimant's overhead reaching on the left was limited due to her tissue expander infection. (*Id.*)

Claimant argues there is no logical bridge from the evidence to the ALJ's conclusion because Dr. Shaw was considering a different impairment, a musculoskeletal one, when determining Claimant's RFC. (Pl.'s Br. at 8, Docket # 10.) Claimant faults the ALJ for relying on Dr. Shaw's "bottom-line" conclusion that she could perform light work and then "backfilling" the opinion "with support from elsewhere in the record" instead of relying on the support Dr. Shaw used. (*Id.* at 9.) Even assuming, however, that ALJ Shenkenberg improperly cited Dr. Shaw's "bottom-line" conclusion in support of his RFC finding, if he truly "backfilled" the opinion—meaning he cited other record evidence to support his finding of light work— it is unclear how this alleged error is anything but harmless.

In determining a claimant's RFC, while the ALJ must consider the entire record, he "is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). And while an ALJ cannot "play doctor" by filling in evidentiary gaps in the record with his own lay opinion, *see Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003), it does not follow that each part of an RFC determination must be supported by the opinion of a medical professional. The RFC determination must be tethered to the record evidence. *See Herren v. Saul*, No. 20-CV-156, 2021 WL 1192394, at *5 (E.D. Wis. Mar. 30, 2021). But

this evidence could come from a variety of sources, such as the claimant's testimony, the treatment records, or statements of third-parties, to name a few.

And while Claimant asserts that the ALJ "did not elaborate on what other support he found" in the record for a light RFC (Pl.'s Br. at 9), this is incorrect. ALJ Shenkenberg noted that while Claimant testified to experiencing extreme fatigue and pain, she reported to her treating physician that she was getting her energy back and felt well. (Tr. 25.) The ALJ cited to Claimant's treatment notes showing no remarkable examination findings despite her issues with neuropathy and her doctor's rating of "0" on the ECOG Performance Status Scale. (Tr. 25, 2085.) The ECOG Performance Status Scale uses a standard criteria to measure how a disease impacts a patient's daily living abilities, known to physicians and researchers as a patient's performance status. https://ecog-acrin.org/resources/ecog-performance-status/(last visited Dec. 30, 2024). The scale has six "grades" ranging from "0," which indicates one is "fully active, able to carry on all pre-disease activities without restriction," to "5," which indicates one is dead. *Id.* The ECOG describes a patient's level of functioning in terms of their ability to care for themself, daily activity, and physical ability (walking, working, etc.). *Id.* Researchers use the ECOG scale as a way for physicians to track changes in a patient's level of functioning as a result of treatment during clinical trials of new treatments. *Id.*

Claimant takes issue with the ALJ's citation to the ECOG scale in her records, arguing that this rating is used to study a patient's performance during clinical trials and not the post-chemotherapy side effects or treatment after a disease is in remission. (Pl.'s Reply Br. at 8–9, Docket # 14.) But it is clear from Claimant's records that her treating providers were using the ECOG scale to describe Claimant's performance levels at that time; thus, even assuming

the doctors were using the scale incorrectly (i.e., not for performance during clinical trials), there is no indication that Claimant's treating providers were inaccurately describing her perceived condition.

ALJ Shenkenberg then explains that the light RFC assessment accounts for Claimant's pain and fatigue, noting that her treatment notes do not support a greater limitation. (Tr. 25.) He further explains that Claimant's RFC "limits [her] to no more than occasional overhead reaching due to the left breast expander infection and further limits [her] to frequent handling and fingering with her right hand due to her complaints of neuropathy." (*Id.*)

Claimant fails to point to evidence that would support greater restrictions that ALJ Shenkenberg overlooked. The Social Security Regulations provide that light work requires frequent walking or standing, from one-third to two-thirds of a workday, with intermittent sitting during the remaining hours of the day. *See Fox v. Heckler*, 776 F.2d 738, 742 (7th Cir. 1985) (citing Social Security Ruling ("SSR") 83-10)). Light work also requires the frequent lifting of up to ten pounds and the occasional lifting of no more than twenty pounds. *Id.* at 742–43. Claimant does not argue that she is more restricted with lifting, carrying, sitting, standing, and/or walking than the ALJ found. Rather, the records support the ALJ's limitation to light work. In September 2020, her treating surgeon, Dr. John Awowale, noted that Claimant denied having any difficulty ambulating or weight bearing and was "cleared to return to work" as far as her femur fracture was concerned. (Tr. 337.) Dr. Awowale noted, however, that Claimant was not likely to return to work until December because of her cancer treatment. (Tr. 337.)

Although Claimant did not ultimately return to work, while undergoing a radiation oncology consultation in January 2021, the treatment records described Claimant as ECOG

1, which means restricted in "physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature," such as "light housework" or "office work." (Tr. 1116.) Also in January 2021, her treating physician, Dr. Ubaid Nawaz, noted that despite having continued neuropathy in her right hand and diagnosing her with "Grade 1 Neuropathy, secondary to chemo" (Tr. 1103), the neuropathy "has not affected her fine motor function much or disturbed her sleep" (Tr. 1100). By July 2022, her ECOG score was 0, her neurological examination showed no focal deficits (Tr. 2085), and while she reported joint pain in the elbows and knees secondary to anastrozole, her doctor encouraged physical activity and said they would "continue to monitor" (Tr. 2086).

Thus, even assuming, *arguendo*, that ALJ Shenkenberg erred in relying on Dr. Shaw's "bottom-line" conclusion that Claimant is limited to light work, his finding is well supported by the record. The ALJ did not err in this regard.

### 2.3 Absence of Opinion Evidence Regarding Cancer-Related Treatment

Claimant argues that the State Agency physicians only reviewed her treatment records through May 2020; thus, there was no input from a medical expert as to the functional impact of the crux of Claimant's claims regarding her cancer treatment—joint pain, fatigue, and neuropathy. (Pl.'s Br. at 10; Pl.'s Reply Br. at 5.) She argues that the ALJ erred in failing to obtain an updated medical opinion. (*Id.*) While Claimant acknowledges that her cancer and neuropathy were not "new" diagnoses, she argues that the State Agency physicians failed to consider the side effects of the anastrozole, the full scope of her cancer treatment, and the persistence of the neuropathy. (Pl.'s Br. at 11.)

An ALJ errs in failing to seek an updated medical opinion when the record contains significant, new, and potentially decisive findings. *See Stage v. Colvin*, 812 F.3d 1121, 1125

(7th Cir. 2016). There is nothing in the record to suggest that ALJ Shenkenberg should have procured an updated medical opinion. To begin, while Claimant argues that "Dr. Shaw did not address any evidence of neuropathy" (Pl.'s Br. at 11), in his assessment, he specifically noted that Claimant's alleged impairments included, among other things, "fatigue," "lack of grip strength," "numbness," and "tingling." (Tr. 59.) Furthermore, as stated above, the ALJ did consider Claimant's complaints of neuropathy, fatigue, and pain and explained that the limitation to light work with a handling/fingering limitation accounted for this. (Tr. 25.) The ALJ further explained why Claimant's allegations regarding the limiting effects of her neuropathy, pain, and fatigue were inconsistent with the record. (*Id.*)

As above, Claimant does not point to any evidence ALJ Shenkenberg failed to consider that would have indicated greater restrictions. Again, the record confirms that Claimant experienced neuropathy, joint pain, and fatigue as a result of her cancer treatments. But the records also support the ALJ's conclusion that these allegations of disabling symptoms are not as limiting as Claimant contends. For example, Claimant reported to her treating provider in October 2021 that she had "a little more" fatigue (Tr. 1271) and was experiencing "joint aches in her elbows and knees" (Tr. 1273) but she denied experiencing "excessive fatigue," noting that the tingling in her extremities was slowly improving (Tr. 1271). Claimant was advised to address her joint pain through physical activity and continued monitoring. (Tr. 1276.) Similarly, while Claimant continued to complain of "some arthritis and painful joints" and fatigue that she "attribute[ed] to the anastrozole" (Tr. 1558, 2086) into 2022, her neurological and musculoskeletal examinations were mostly normal (Tr. 1805, 2081, 2085). Furthermore, Claimant was not consistently experiencing joint pain, as during this same timeframe in 2022, Claimant also specifically denied experiencing arthralgias. (Tr. 1315,

10

1804, 1850.) For these reasons, none of Claimant's symptoms were significant, new, and potentially decisive requiring the ALJ to obtain an updated medical opinion. The ALJ did not err in this regard.

### 2.4 Evaluation of Subjective Symptoms

Finally, Claimant argues the ALJ erred in evaluating her subjective symptoms of joint pain, fatigue, and neuropathy by cherry-picking the record, failing to obtain an updated medical opinion, failing to explain how the symptoms were accounted for in the RFC, and failing to consider limitations in her daily activities. (Pl.'s Br. at 14–20.)

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

11

Many of Claimant's arguments are merely a repackaging of the arguments raised above. Claimant argues ALJ Shenkenberg cherry-picked the record in discounting her claims of disabling symptoms. While an ALJ need not mention every piece of evidence in the record, he "has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). This is not a case where the ALJ cherry-picked the record. He recognized Claimant's testimony regarding her joint pain, fatigue, and neuropathy and how it allegedly affected her ability to walk and use her right hand. (Tr. 24.) He concluded, however, that her allegations regarding the limiting effects of her symptoms were inconsistent with the record as a whole. (*Id.*) The ALJ then explained how he was accounting for her pain, fatigue, and neuropathy in the RFC. (Tr. 25.)

Claimant also argues the ALJ offered no explanation as to how the RFC accounts for her joint pain and fatigue. However, as explained above, Claimant points to no evidence ALJ Shenkenberg failed to consider that would support a greater limitation. While Claimant takes issue with her doctors' use of the ECOG scale in rating her performance abilities (Pl.'s Reply Br. at 8–9), she does not contend that her doctors were inaccurately evaluating her abilities. And the records show that after taking anastrozole for a year (Tr. 2083), her treating providers found she was tolerating the medication "relatively well" despite experiencing some joint pain and rated her ECOG level at 0, indicating Claimant was "fully active, able to carry on all pre-disease activities without restrictions" (Tr. 2085–86).

Finally, Claimant contends the ALJ did not consider the consistency between her alleged daily activities and her allegations of disabling symptoms. (Pl.'s Br. at 19.) She testified that she had difficulties with basic activities such as buttoning a shirt, brushing her teeth,

writing with a pen, and driving. (*Id.*) She also testified that she needed help doing household chores and relied on her daughter to shop for her groceries. (*Id.* at 19–20.) But the ALJ did consider Claimant's testimony regarding these daily activities, specifically stating that Claimant testified that "she is not always able to walk up and down the steps at her home and that she therefore keeps everything she needs on the first floor" and that "her neuropathy makes it difficult to write, brush her teeth, pick things up from the ground, and button her shirt." (Tr. 24.) The ALJ goes on to explain why Claimant's statements regarding the limiting effects of her symptoms were inconsistent with the record as a whole. While Claimant disagrees with the ALJ's assessment, he did not ignore her allegations of disabling symptoms.

Furthermore, the ALJ's conclusion regarding Claimant's subjective symptoms is well-supported by the record. Again, her doctors noted by 2022 that she was "fully active, able to carry on all pre-disease activities without restrictions." (Tr. 1568, 2085–86, 2088.) For the neuropathy and joint pain, her doctors recommended regular exercise. (Tr. 2086.) And when Claimant fractured her fingers in May 2022, she indicated she fell while cleaning the refrigerator. (Tr. 1809.) She also indicated during this time frame that she was doing regular exercise with weights and sleeping seven hours per night with no concerns. (Tr. 1565, 2131.) For these reasons, the ALJ did not err in his consideration of Claimant's subjective symptoms.

## CONCLUSION

Claimant argues that the ALJ's decision finding her not disabled is contrary to the substantial evidence in the record. For the reasons explained above, I find that the ALJ's decision in this case is well supported by the substantial evidence in the record. The Commissioner's decision is affirmed. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of December, 2024.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge